UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK WILLIAM LEAR,<br><br>Plaintiff,<br><br>PREETRANJAN SAHOTA, et al..<br><br>Defendants. | No. 2:18-cv-3099 DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Before the court are plaintiff's motion to proceed in forma pauperis, plaintiff's complaint for screening, and plaintiff's motion for a temporary restraining order. For the reasons set forth below, this court grants plaintiff's motion to proceed in forma pauperis, finds plaintiff has stated some cognizable claims, and gives plaintiff an opportunity to either amend his complaint or proceed on the cognizable claims in his current complaint. In addition, this court recommends plaintiff's claims for injunctive relief be dismissed and plaintiff's motion for a temporary restraining order be denied.

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in

1

accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**SCREENING**

I. **Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550

U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**II.    Analysis**

    **A. Allegations of the Complaint**

Plaintiff complains of conduct that occurred at California State Prison-Sacramento ("CSP-Sac) when he was incarcerated there in early 2018.[1] Plaintiff identifies sixteen defendants: (1) Dr. Preetranjan Sahota; (2) Dr. Meskath Uddin; (3) RN Christopher Buckman; (4) Associate Warden Richardson; (5) Associate Warden Jones; (6) Correctional Officer ("CO") J. Burke; (7) CO Porter; (8) Correctional Sergeant ("CS") K. Porter; (9) CS A. Cross; (10) CO R. Valine; (11) CO Adivincula; (12) Correctional Lieutenant R. Vela; (13) CO Fuller; (14) Nurse T. Whaley; (15) Chief Medical Executive Manjula Bobbala; and (16) CSP-Sac. (ECF No. 1 at 2-3.)

Plaintiff recounts a long story involving primarily the treatment, or lack of treatment, for his mobility issues at CSP-Sac starting in January 2018 when he was transferred there. Plaintiff

---

[1] On January 4, 2019, plaintiff filed a change of address which shows that he has been transferred to California State Prison-Corcoran. (ECF No. 9.)

3

identifies his mobility issues as extreme weakness and pain in both legs. He states that he informed all defendants of these problems. He also alleges that on June 18, 2018, he was seen by a neurosurgeon who recommended a bone fusion, screws, and a cast on plaintiff's spine. The neurosurgeon told plaintiff to avoid stairs and recommended he be placed in an infirmary.

As best the court can tell from reviewing plaintiff's complaint, he appears to be alleging the following claims.

First, plaintiff contends defendant Sahota relied on incorrect and outdated information from plaintiff's prior incarceration at Pelican Bay State Prison ("PBSP") to deny him accommodations for his mobility problems. Plaintiff had filed a request for reasonable accommodations so that he would not be required to use stairs and could avoid slopes. Sahota then improperly rated plaintiff able to climb six steps and walk 100 yards, and determined he required no mobility devices. She deprived plaintiff of the wheelchair he was provided upon his arrival at CSP-Sac. Plaintiff contends these actions amounted to deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

Second, plaintiff contends defendants Uddin and Buckman were deliberately indifferent when they acceded to Sahota's determination that plaintiff required no accommodations and also when they relied on the PBSP information to refuse plaintiff accommodations. Plaintiff states that Uddin and Buckman provided him with a walker, and told him Sahota could not find out, but when that walker broke, they refused to provide him with another one. He was eventually provided with a new walker on September 28, 2018 as a result of a recommendation from a physical therapist and his health care appeal.

Third, plaintiff states that he fell four times trying to negotiate stairs on a transport bus in May 2018. Defendant Bobbola reviewed his grievance from that event and "intentionally circumvented" plaintiff's appeal issues. Plaintiff also contends Bobbola was part of the committee that denied him reasonable accommodations. Plaintiff alleges Bobbola was deliberately indifferent to his medical needs.

Fourth, plaintiff contends that in June 2018 defendant Jones falsely informed him that building C2 at CSP-Sac was compliant with the Americans with Disabilities Act ("ADA") and

had a ramp plaintiff could use instead of stairs. After plaintiff agreed to be housed there, he found no ramp and was unable to use the stairs, even with the help of other inmates. Plaintiff contends Jones was deliberately indifferent to his medical needs.

Fifth, on June 8, 2018, after plaintiff refused to use the stairs to enter C building, defendant Vela attempted to force him to do so. Vela told plaintiff to place both arms behind his back to be handcuffed. When plaintiff refused to place his left arm behind his back due to a shoulder injury, which he explained to Vela, Vela and officers Cross, Porter, and Adivincula took plaintiff's cane and threw him to the ground. Some officers punched plaintiff in the face. Vela then cuffed plaintiff by forcing his left arm behind his back, causing plaintiff pain. Plaintiff contends these officers used excessive force in violation of the Eighth Amendment. In addition, plaintiff alleges they are liable for assault and battery under state tort law.

Seventh, plaintiff alleges defendant Whaley stood by and did nothing to help him during the assault by officers on June 8. In addition, Whaley incorrectly recorded that plaintiff told her afterwards that he had "no comment" and had no injuries. Plaintiff alleges Whaley was deliberately indifferent to his medical needs.

Eighth, plaintiff contends he was falsely accused of assaulting defendant Burke during the June 8 incident. He alleges he suffered retaliation at Sahota's direction as a result. In addition, he was later found guilty of assaulting Burke at a hearing at which he was not allowed to question Burke or see any of the evidence.

Ninth, plaintiff contends that defendant Kelly "routinely rejected plaintiff's appeals" and told plaintiff that health care grievances were not the appropriate way to address his medical and mobility issues. Plaintiff also states that Kelly was on the panel that denied plaintiff's CDCR 1824 request for reasonable accommodations.

Tenth, and finally, plaintiff contends that Buckman, Uddin, Bobbala, Sahota, Kelly, Richardson, Jones, and CSP-Sac violated his rights under the ADA and the Rehabilitation Act by failing to provide him needed accommodations.

Plaintiff seeks declaratory relief, an injunction requiring CSP-Sac to provide him appropriate accommodations, an injunction requiring CSP-Sac to release him from punitive segregation, an

injunction requiring CSP-Sac to expunge his disciplinary conviction, and compensatory and punitive damages.

### B. Does Plaintiff State Cognizable Claims?

#### 1. Eighth Amendment Deliberate Indifference

##### a. Legal Standards

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson, 503 U.S. at 5 (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the

objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise

to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### b. Analysis

Plaintiff alleges that he has a serious medical need – his legs are too weak to support him and he cannot climb stairs or walk much on slopes. Plaintiff told defendants Sahota, Uddin, and Buckman about his mobility problems, but they refused to provide him with accommodations in housing or with mobility assistance devices. Because these defendants are medical professionals who, according to plaintiff, looked to outdated information to determine that plaintiff was not entitled to accommodations, the court finds plaintiff has alleged potentially cognizable claims for deliberate indifference to his serious medical needs against these defendants.

With respect to defendant Whaley, plaintiff alleges that she failed to intervene when he was being assaulted by officers. Essentially, plaintiff is arguing a failure to protect under the Eighth Amendment. That claim is discussed below. To the extent plaintiff contends Whaley was deliberately indifferent when she failed to properly record his injuries after the assault, plaintiff fails to show that Whaley acted deliberately or that the failure to record his injuries properly resulted in further injury to him. Plaintiff fails to state facts sufficient to allege a deliberate indifference claim against Whaley.

Plaintiff also fails to state deliberate indifference claims against Bobbola and Kelly. The fact that they were part of the committee that denied him accommodations does not amount to deliberate indifference. Plaintiff does not show what they knew about his medical issues or whether they, in fact, agreed that he did not require accommodations. Further, plaintiff does not explain how either defendant's involvement in his appeals amounted to deliberate indifference. Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); Hernandez v. Cate, 918 F. Supp. 2d 987, 1018 (C.D. Cal. 2013). Unless Bobbola and Kelly's involvement in an appeal caused plaintiff additional injury, they cannot be charged with deliberate indifference. Farmer, 511 U.S. at 842.

Plaintiff fails to show that Jones acted with deliberate indifference when he advised plaintiff that building C2 had a ramp. Plaintiff does not show that Jones's statement was anything more than carelessness or negligence. Neither of these states of mind amounts to an Eighth Amendment violation.

### 2. Eighth Amendment Excessive Force

For claims arising out of the use of excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson, 503 U.S. at 7). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8, and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10).

Plaintiff contends the force defendants used to handcuff him was unnecessary and malicious. He told Vela he could not place his left arm behind his back and asked whether Vela could instead use two cuffs or use a waist chain. Instead, Vela and defendants Cross, Porter, and Adivincula forced plaintiff to the ground, struck him in the face, and forced his left arm behind his back to cuff him. Plaintiff has adequately alleged a claim of excessive force against these defendants.

### 3. State Law Claims

With respect to plaintiff's state law claims for assault and battery, he is advised that section 945.4 of the Government Claims Act provides that

> [n]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division *until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board*, in accordance with Chapters 1 and 2 of Part 3 of this division.

Cal. Gov't Code § 945.4 (emphasis added). Section 950.6 provides that

9

> "[w]hen a written claim for money or damages for injury has been presented to the employing public entity: (a) a cause of action for such injury may not be maintained against the public employee or former public employee whose act or omission caused such injury *until the claim has been rejected, or has been deemed to have been rejected, in whole or in part by the public entity*."

Cal. Gov't Code § 950.6 (emphasis added). See also Creighton v. City of Livingston, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) ("A plaintiff's supplemental state law claims against a California public agency are barred unless the plaintiff has complied with the requirements of the [Government] Claims Act before commencing a civil action.") (citing Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995)).

The claims-presentation requirement "constitutes an element of any cause of action arising under the Government Claims Act." Mohsin v. Cal. Dep't of Water Res., 52 F. Supp. 3d 1006, 1017-18 (E.D. Cal. 2014). Failure to meet this requirement subjects a claim to dismissal for failure to state a cause of action. Yearby v. California Dep't of Corr., No. 2:07–cv–2800 JAM KJN P, 2010 WL 2880180, at *4-5 (E.D. Cal. July 21, 2010), rep. and reco. adopted, 2010 WL 3769108 (E.D. Cal. Sept. 22, 2010). "Plaintiffs must 'allege facts demonstrating or excusing compliance with the claim presentation requirements.'" Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008) (quoting State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004) (holding that "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action")).

Because plaintiff has not alleged that he complied with the Government Claims Act, his state law claims will be dismissed. If plaintiff chooses to amend his complaint, he may demonstrate such compliance.

### 4. Eighth Amendment Failure to Protect

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer, 511 U.S. at 832-33; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner

must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." Labatad, 714 F.3d at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, and citations omitted).

Plaintiff alleges defendant Whaley stood by while officers threw him to the ground, beat him, and forced handcuffs on him. However, plaintiff does not allege that Whaley, who was a nurse not a correctional officer, had the power to intervene or that she had the time to do so. On the facts presented, the court finds plaintiff has not alleged a cognizable claim that Whaley had a sufficiently culpable state of mind under the Eighth Amendment.

### 5. Americans with Disabilities Act and Rehabilitation Act

Plaintiff finally alleges numerous defendants violated his rights under the ADA by failing to accommodate his mobility disabilities.

#### a. Legal Standards to State a Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II authorizes suits by private citizens for money damages against public

entities, United States v. Georgia, 546 U.S. 151, 153 (2006), and state prisons "fall squarely within the statutory definition of 'public entity,'" Pennsylvania Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998).

"Generally, public entities must 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)). The state is responsible for providing inmates with "the fundamentals of life, such as sustenance, the use of toilet and bathing facilities, and elementary mobility and communication," and as such, the ADA requires that these "opportunities" be provided to disabled inmates "to the same extent that they are provided to all other detainees and prisoners." Armstrong v. Schwarzenegger, 622 F.3d 1058, 1068 (9th Cir. 2010); see also Pierce, 526 F.3d at 1220 (finding ADA violation where defendant failed to articulate "any legitimate rationale for maintaining inaccessible bathrooms, sinks, showers, and other fixtures in the housing areas and commons spaces assigned to mobility- and dexterity-impaired detainees").

In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001) ("If a public entity denies an otherwise 'qualified individual' 'meaningful access' to its 'services, programs, or activities' 'solely by reason of' his or her disability, that individual may have an ADA claim against the public entity.").

Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate

indifference, "which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. The ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

To establish a violation of section 504 of the RA, a plaintiff must show "(1) she is handicapped within the meaning of the [RA]; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). The elements of claims under the ADA and the RA are functionally the same. See Atcherley v. Hanna, No. 2:13-cv-0576 AC P, 2014 WL 2918852, at *7 (E.D. Cal. June 26, 2014).

### b. Appropriate Defendants in ADA/RA Actions

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. Georgia, 546 U.S. at 153. State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Yeskey, 524 U.S. at 210; Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). However, a state official sued in her official capacity is, in effect, a suit against the government entity and is an appropriate defendant in an ADA action. See Applegate v. CCI, No. 1:16-cv-1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (citing Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003); Kentucky v. Graham, 473 U.S. 159, 165 (1985)).

Plaintiff also cannot bring a § 1983 action against defendants in their individual capacities based on allegedly discriminatory conduct. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002). "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." Id.

Generally, a plaintiff is not entitled to monetary damages against defendants in their official capacities. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The

Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."). However, the Eleventh Amendment does not bar ADA or RA suits against state officials in their official capacities for injunctive relief or damages. See Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 792-93 (9th Cir. 2004).

### c. Analysis

Plaintiff's alleged mobility issues qualify as a disability under the ADA. He further alleges he was unable to access his housing due to his inability to get appropriate accommodations and that CSP-Sac did not provide appropriate housing. Plaintiff has sufficiently alleged a claim under the ADA and RA. However, the appropriate defendant for this claim is CSP-Sac. Georgia, 546 U.S. at 153. The remaining defendants will be dismissed from plaintiff's ADA/RA claim.

### 6. Retaliation

It is not clear whether plaintiff is attempting to raise a claim for retaliation. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). Plaintiff states only that after he was accused of assaulting Burke, he suffered retaliation. Plaintiff does not show what protected conduct he was exercising, what actions were taken in retaliation, or who took those actions. He fails to state a claim for retaliation.

### 7. Due Process Standards for Disciplinary Hearings

The court is also unable to determine if plaintiff is attempting to allege that he was not afforded due process in the disciplinary hearing regarding the assault on Burke. Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. See id. But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is

narrowly restricted by state statute or regulations, and the sanctions are severe. See id. at 556–57, 571–72 n.19. Later, the Court limited application of the Wolff standards to prisoners who show that the deprivation of their liberty was "an atypical and significant hardship on the inmate in relation to the ordinary and normal incidents of prison life." Sandin v. O'Connor, 512 U.S. 472, 485 (1995).

Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

Additionally, "some evidence" must support the decision of the hearing officer in a disciplinary proceeding. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." Id. at 455–56. However, the evidence must have some indicia of reliability. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

Plaintiff states that he was not given an opportunity to see the evidence or question Burke at the disciplinary proceeding. This is not sufficient to state a claim for a due process violation. To show he was entitled to the due process protections set out in Wolff, plaintiff must first show he

suffered "an atypical and significant hardship" as a result of the disciplinary action. After he makes that showing, plaintiff must allege facts showing that he was deprived of one of Wolff's five procedural requirements, described above.

### 8. Relief Sought

In addition to damages, plaintiff seeks injunctive relief requiring CSP-Sac and non-defendant CDCR to: (a) appropriately house him; (b) supply him with appropriate accommodations; (c) arrange for an MRI of his shoulder and spine and a consultation with a neurologist; (d) immediately carry out any treatment directed by a neurologist; (e) release plaintiff from punitive segregation; and (f) expunge the disciplinary conviction described in the complaint. Injunctive relief is not appropriate against CSP-Sac or CDCR.

First, CDCR is not a party to this action. The court may not issue an injunction against individuals not parties to an action. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment . . . resulting from litigation in which he is not designated as a party . . . .") And, plaintiff may not amend his complaint to include CDCR because it is not a "person" within the meaning of § 1983 and because it is immune from liability under the Eleventh Amendment. See Pennhurst State Sch. & Hospital v. Halderman, 465 U.S. 89, 100 (1984).

Second, because plaintiff has been transferred out of CSP-Sac, prospective injunctive relief is not appropriate. Defendant CSP-Sac no longer has authority over the conditions of plaintiff's confinement. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Woodard v. Haviland, No. 2:09-cv-2145 LKK JFM (PC), 2010 WL 481371, at *2 (E.D. Cal. Feb. 5, 2010) (when plaintiff has been transferred, defendant from prior prison no longer has authority over plaintiff and injunctive relief not proper). Plaintiff's claims for injunctive relief should be dismissed as moot.

### TEMPORARY RESTRAINING ORDER

On December 6, 2018, plaintiff filed a motion for a temporary restraining order in which he asked the court to rule on his case as quickly as possible because defendants continued to refuse to address his mobility issues. However, shortly thereafter plaintiff filed a notice that he had been transferred from CSP-Sac, where all defendants work, to California State Prison-Corcoran. (ECF

No. 9.) As discussed above, prospective injunctive relief is not appropriate against defendants at CSP-Sac. Defendants no longer have authority over the conditions of plaintiff's confinement. Plaintiff's request for a temporary restraining order should be dismissed as moot.

## CONCLUSION

The court finds above that plaintiff has stated the following potentially cognizable claims: (1) for deliberate indifference in violation of the Eighth Amendment against defendants Sahota, Uddin, and Buckman; (2) for excessive force in violation of the Eighth Amendment against defendants Vela, Cross, Porter, and Adivincula; and (3) for violations of his rights under the ADA and RA against defendant CSP-Sac. Plaintiff may proceed on these claims or he may amend his complaint to attempt to state additional claims. Plaintiff is warned that in any amended complaint he must include ALL claims he wishes to proceed on in this action.

If plaintiff chooses to file an amended complaint, he must address the problems with his complaint that are explained above. Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. If plaintiff wishes to add a claim, he must include it in the body of the complaint. The charging allegations must be set forth in the amended complaint so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). "Vague and conclusory allegations of
////

official participation in civil rights violations are not sufficient." <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. <u>See</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; <u>cf.</u> Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. <u>See</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, the original pleading is superseded. By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.
2. Plaintiff' claims against defendants Richardson, Jones, Burke, K. Porter, Valine, Whaley, Fuller, and Bobbala are dismissed with leave to amend.
3. Plaintiff may choose to proceed on his cognizable claims set out above or he may choose to amend his complaint.
    a. If plaintiff chooses to proceed on his current Eighth Amendment deliberate indifference claims against defendants Sahota, Uddin, and Buckman, his Eighth Amendment excessive force claims against claims against defendants Vela, Cross,

18

|   |   |
|---|---|
| 1 | Porter, and Adivincula, and his ADA/RA claims against defendant CSP-Sac, he shall |
| 2 | so notify the court within thirty days. The court will then order service of the |
| 3 | complaint on these eight defendants and will recommend dismissal of plaintiff's |
| 4 | remaining claims and the remaining defendants. |
| 5 | b.  If plaintiff chooses to amend his complaint, within thirty days from the date of |
| 6 | service of this order, he may file an amended complaint that complies with the |
| 7 | requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the |
| 8 | Local Rules of Practice. The amended complaint must bear the docket number |
| 9 | assigned this case and must be labeled "First Amended Complaint." Plaintiff's |
| 10 | failure to file an amended complaint within the time provided, or otherwise respond |
| 11 | to this order, will result in the case proceeding on plaintiff's Eighth Amendment and |
| 12 | ADA/RA claims identified above. The court will then recommend dismissal of |
| 13 | plaintiff's remaining claims. |
| 14 | 4. The Clerk of the Court is directed to randomly assign a district judge to this case and to |
| 15 | send plaintiff a copy of the prisoner complaint form used in this district. |
| 16 | Further, IT IS RECOMMENDED that: |
| 17 | 1. Plaintiff's claims for injunctive relief be dismissed; and |
| 18 | 2. Plaintiff's motion for a temporary restraining order (ECF No. 6) be denied. |
| 19 | These findings and recommendations are submitted to the United States District Judge |
| 20 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days |
| 21 | after being served with these findings and recommendations, plaintiff may file written objections |
| 22 | with the court and serve a copy on all parties. Such a document should be captioned "Objections |
| 23 | to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file |
| 24 | //// |
| 25 | //// |
| 26 | //// |
| 27 | //// |
| 28 | //// |

objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 21, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/lear3099.scrn lta